UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**SOUTHERN DIVISION** at **LONDON**

ALBERT D. HUSKEY,                  )
                                   )
        Plaintiff,                 )        Civil Case No.
                                   )        6:18-cv-152-JMH
V.                                 )
                                   )
ANDREW SAUL, Commissioner          )        **MEMORANDUM OPINION**
of Social Security,[1]             )            **AND ORDER**
                                   )
        Defendant.                 )

                ** ** ** ** **

        Plaintiff Albert D. Huskey brings this action under 42 U.S.C.
§ 405(g) to challenge Defendant Commissioner's final decision
denying Plaintiff's application for Social Security Disability
Insurance Benefits. [DE 2]. The specific matters currently before
the Court include Plaintiff's Motion for Summary Judgment [DE 11]
and Defendant's Motion for Summary Judgment [DE 13]. Both matters
are now ripe for decision, and for the reasons discussed below,
Plaintiff's Motion for Summary Judgment [DE 11] will be denied,
and Defendant's Motion for Summary Judgment [DE 13] will be
granted. Accordingly, the Court will affirm the Commissioner's
decision, as it is supported by substantial evidence.

---

[1] On June 17, 2019, Andrew Saul was sworn in as the Commissioner of Social
Security. When this action was filed, Nancy Berryhill was serving as Acting
Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of
Civil Procedure, Commissioner Saul is automatically substituted as a party.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 15, 2014, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging his disability began on March 28, 2013. [Tr. 109, 288-94]. At the time of Plaintiff's alleged disability onset date, he was 46 years old. [Tr. 110]. Plaintiff completed the ninth (9th) grade, and his past relevant work was as a repairman in both a furniture factory and the coal mines. [Tr. 324]. In Plaintiff's application materials, he initially alleged he was unable to work due to black lung and pain in his neck, back, arms, and legs. [Tr. 110, 323].

In June 2008, Plaintiff strained his back moving things, and an MRI revealed a "right paracentral disc herniation with moderate stenosis." [Tr. 420-23]. Following a March 2013 motor vehicle accident, Plaintiff had a CT scan of his cervical spine, which showed "signs of degenerative disk disease involving the C5-C6" with a "mild diffuse bulging annulus." [Tr. 590]. The CT scan was accompanied by an x-ray, which showed Plaintiff's lumbar spine to be normal. [Tr. 592]. A March 26, 2013, MRI showed "[p]rominent osteophyte disc complexes . . . at C3-C4 and C-5-C6 slightly impinging on the thecal sac" and "[n]o definite evidence for disc protrusion." [Tr. 596]. On April 1, 2013, James R. Bean, M.D., examined Plaintiff and reviewed the March 26, 2013, MRI, finding that it showed "no evidence of disk herniation" and "a minor bulge to the left of the C5-C6 which appears to be chronic." [Tr. 600-

01]. Dr. Bean diagnosed Plaintiff with cervical and lumbar sprains and recommended physical therapy, so Plaintiff could rehabilitate and return to work. [Tr. 601]. On May 1, 2013, despite finding Plaintiff did not qualify for wrist work, hand work or assembly activities, or shoulder work, Plaintiff's physical therapist also found Plaintiff "qualifie[d] for sedentary work for shoulder and overhead lifts and qualifies for sedentary-light work for 2-handed carry activities." [Tr. 639-52]. Between March 5, 2013 and July 11, 2013, Julie A. Jackson, APRN, and other healthcare providers at Harlan Appalachian Regional Healthcare ("ARH"), treated Plaintiff's physical complaints with opioid medication. [Tr. 727, 732, 738-739, 883, 897, 902, 930].

On July 28, 2014, Plaintiff was in a four-wheeler accident and fractured his right lateral tibia plateau. [Tr. 954-55]. To correct the fracture, Plaintiff had an open reduction and internal fixation. [Tr. 956-57].

On September 16, 2014, at the behest of the Kentucky Department for Disability Determination, Kathleen M. Monderewicz, M.D., conducted a consultative examination of Plaintiff. [Tr. 1156-65]. At the time of Dr. Monderewicz's examination, Plaintiff was still recovering from his fractured tibia, which occurred only seven (7) weeks prior. [Tr. 1159]. Dr. Monderewicz noted the following about Plaintiff: "no dyspnea with exertion . . . is noted during ambulation to the exam room or with effort of talking

dressing/undressing and ROM performance;" "ambulates using two crutches with limping and partial weight bearing on the right lower extremity;" "appears uncomfortable in the sitting and supine position as well as lying down and rising from the exam table;" "has difficulty stepping up and down from the exam table;" and "[t]o get up on the exam table he slides onto the table without using a step stool and he steps down bearing weight onto the left lower extremity without using crutches." [Tr. 1160]. Dr. Monderewicz further noted, "Since the fracture does not appear to be a maximum medical improvement, [t]he claimant would need to be reassessed later for any chronic changes in the right leg and knee." [Tr. 1163].

Dr. Monderewicz diagnosed Plaintiff with the following: "[c]hronic neck pain with history of radicular symptoms of both upper extremities;" "[d]eep tendon reflex finding in the right upper extremity;" "motor weakness in the left upper extremity suggested radiculopathy involving the C5-C7 nerve root levels corresponding to the area of cervical spine tenderness;" "[o]steoarthrosis of the hands;" "[t]here may also be mild degenerative changes of the left acromial clavicular joint;" "[c]hronic thoracic spine pain;" "[c]hronic low back pain with history of radicular symptoms to both lower extremities;" and "[h]istory of co[al] workers pneumoconiosis and tobacco use." [Tr. 1162-63]. Dr. Monderewicz noted, "Straight leg raising was

positive; right leg more than left. However, absence of the right patellar deep tendon reflex may be due to decrease [sic] sensation over the right knee and leg following surgery for fracture." [Tr. 1163]. With Plaintiff still in a recovering state, Dr. Monderewicz opined, "Currently the claimant is unable to squat, kneel, or crawl on the right knee. The claimant can currently not climb ladders or engage in unprotected height." [Tr. 1163]. Dr. Monderewicz further opined that prolonged siting, standing, walking, bending, stooping, squatting, and heavy lifting and carrying were limited by Plaintiff's chronic back pain, and Plaintiff's use of his upper extremities for overhead reaching and pushing and pulling were limited by his neck and back pain. [Tr. 1163]. However, Dr. Monderewicz noted that Plaintiff's grip strength and fine manipulation were normal bilaterally. [Tr. 1163].

An October 20, 2014, x-ray of Plaintiff's lumbar spine showed normal findings. [Tr. 1168]. An October 21, 2014, x-ray of the cervical spine showed mild degenerative changes and narrowing of the neural foramina at C5-C6. [Tr. 1169]. On November 3, 2014, Dr. Bean reviewed Plaintiff's x-rays of the cervical spine and lumbar spine and opined that Plaintiff's lumbar spine was normal, his cervical spine showed "mild narrowing at C5-C6," his radiographic findings were "quite minor," and Dr. Bean saw "no radiologic reason to assess a permanent impairment." [TR. 1203].

On December 10, 2014, Plaintiff visited his tibia surgeon, who reported Plaintiff was "doing very well" and "able to ambulate and walk without major restrictions." [TR. 1211-12]. While Plaintiff stated that he was unable to run or do increased activities and complained of pain of the anterior aspect of the knee and sensation of crepitus, he was found to have a normal range of motion and no instability. [Tr. 1211-12]. On January 20, 2015, Plaintiff's physical therapist noted that Plaintiff ambulated throughout the clinic without an assistive device and had a "[v]ery mild" antalgic gait. [Tr. 1219-20]. On November 12, 2015, Plaintiff presented to Julie A. Jackson, ARNP, that he had "chronic low back pain, mid back pain, neck pain, bilateral upper extremity paresthesias, and bilateral lower extremity parasthesias." [Tr. 1323].

On January 14, 2015, H. Thompson Prout, Ph.D., a state agency psychological consultant, provided on an opinion on Plaintiff's medically determinable impairments and found Plaintiff's affective disorders were not severe mental impairments. [Tr. 129]. Additionally, Dr. Prout opined that Plaintiff's affective disorders did not restrict him in his activities of daily living and only caused mild difficulties in maintaining social functioning, concentration, persistence, and pace. [Tr. 129].

On January 15, 2015, Diosado Irlandez, M.D., a state agency medical consultant, provided an opinion on Plaintiff's Residual

Functional Capacity ("RFC"). [Tr. 131-33]. Dr. Irlandez found that due to Plaintiff's S/P ORIF of the right knee and tibia fracture and low back pain, Plaintiff had the following exertional limitations: occasionally lift or carry twenty (20) pounds; frequently lift or carry ten (10) pounds; sit, stand, or walk six (6) hours in an eight (8) hour workday; and push or pull limited in lower extremities, right. [Tr. 131]. Dr. Irlandez also found that due to Plaintiff's S/P ORIF of the right knee and tibia fracture and low back pain, Plaintiff could: occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; and occasionally stoop, kneel, crouch, or crawl. [Tr. 105, 123]. Dr. Irlandez further found that due to Plaintiff's low back pain and pneumonconiosis, Plaintiff should avoid concentrated exposure to vibration, concentrated exposure to hazards, such as machinery and heights, and concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. [Tr. 105, 123].

A May 16, 2017, cervical spine AP showed disc disease at C5-C6 with narrowing of the disc space and degenerative changes at C-5-C6 and C6-C7 with small anterior osteophyte. [Tr. 1445]. On June 16, 2017, during an appointment at Mountain Comprehensive Health, Plaintiff presented walking with a cane and was prescribed a new cane. [Tr. 1434]. On June 28, 2017, Plaintiff visited Kentucky Orthopedic Clinic and was reported to: walk with a cane; have a non-antalgic gait; have limited mobility and tenderness in his

back; reduced strength in his left hip flexor and right quadriceps; and positive straight leg raise bilaterally. [Tr. 1450]. A July 19, 2017, MRI found, "Mild degenerative changes are present. At L3-4 and L4-5, mild disc bulges and mild facet hypertrophy result in mild narrowing of the neural foramina and thecal sac. There is no disc herniation, significant central spinal stenosis or nerve root compression at any level." [Tr. 1454].

Plaintiff's disability claims were denied both initially and on reconsideration. [Tr. 109, 136]. After a January 8, 2016, hearing, [Tr. 70-108], on February 4, 2016, an Administrative Law Judge ("ALJ") reviewed the evidence of record and denied Plaintiff's application. [Tr. 137-54]. However, on April 11, 2017, the Appeals Council vacated the ALJ's February 4, 2016, decision [Tr. 137-54] and remanded this case for further consideration of Plaintiff's maximum residual functional capacity ("RFC"), the medical opinion evidence, and the vocational evidence. [Tr. 155-59]. On September 7, 2017, the ALJ held a second hearing, [Tr. 30-69]. As will be discussed further herein, Plaintiff testified at the second hearing. [Tr. 35-64].

In addition to Plaintiff, vocational expert ("VE") William Ellis testified. [Tr. 64-68]. VE Ellis testified that a hypothetical person of Plaintiff's age, with Plaintiff's education, work experience, and limitations, could not perform Plaintiff's past relevant work as a repairman, a medium, skilled

occupation, as classified by the Dictionary of Occupational Titles ("DOT"), but very heavy as actually performed. [Tr. 64-65]. However, VE Ellis also testified that a person such as Plaintiff could perform light exertional work as a ticket taker, parking lot attendant, and mail clerk, and VE Ellis clarified, "That's a representative and not an exhaustive list and the region is the state of Kentucky." [Tr. 65]. VE Ellis further testified that if the hypothetical person required the ability to alternate between sit and stand every thirty (30) minutes, they would still be able to perform the previously mentioned jobs, but "[t]hey would be reduced by 50 percent." [Tr. 65]. Responding to a final hypothetical question, VE Ellis testified that if such a person, as previously described, required three (3) additional ten (10) minute unscheduled breaks each day, "[i]t would eliminate those jobs plus all jobs." [Tr. 66]. While VE Ellis cited the DOT at times, VE Ellis's testimony deviated from the DOT "at the exertional level and that was due to the claimant's testimony and/or the information [he] received concerning [the claimant's] work history." [Tr. 64-65]. VE Ellis also testified his answers regarding Plaintiff sitting and standing and breaks were not supported by the DOT because "[t]he sit stand option is not in the DOT so it would actually come from my observations and surveys I've done," and "[t]he breaks aren't in the DOT, so, again, it's per observation of work." [Tr. 65-66].

After the second hearing, on January 4, 2018, the ALJ reviewed the evidence of record and denied Plaintiff's application. [Tr. 8-29]. In denying Plaintiff's application, the ALJ found Plaintiff had the following severe impairments: "cervical and lumbar degenerative disc disease, history of tibial fracture status post open reduction internal fixation, black lung disease, osteoarthritis of the hands and left shoulder, obesity." [Tr. 14 (citing 20 C.F.R. §§ 404.1520(c)]. Despite the ALJ finding Plaintiff had multiple severe impairments, the ALJ also found Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), with the following physical limitations: occasional pushing and pulling with the right lower extremity; occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; occasional stooping, kneeling, crouching, and crawling; frequent exposure to vibration; occasional exposure to fumes, odors, dusts, gases, and poor ventilation; and frequent exposure to unprotected heights or dangerous moving machinery. [Tr. 18].

The ALJ, accepting the vocational expert's testimony, found Plaintiff was unable to perform his past relevant work as a repairman, which is classified by the DOT as a medium, skilled occupation, but very heavy as actually performed. [Tr. 21-22]. However, again accepting the vocational expert's testimony, the ALJ determined there are other jobs Plaintiff could perform in the

national economy, such as ticket taker, parking lot attendant, and mail clerk, which are classified as light work, and Plaintiff was, therefore, found to not be disabled. [Tr. 22-23]. On April 27, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's January 4, 2018, decision [Tr. 8-29], which rendered the decision [Tr. 8-29] final. [Tr. 1-5].

Having exhausted his administrative remedies, on May 21, 2018, pursuant to 42 U.S.C. § 405(g), Plaintiff sought review through an action in this Court. [DE 2]. On August 22, 2018, Defendant filed an Answer [DE 9] contending, "Paragraph 6 of Plaintiff's Complaint states a legal conclusion to which no responsive pleading is required," and "Plaintiff's Complaint represents a Prayer for Relief to which no responsive pleading is required." [DE 9, at 2]. To the extent that the Court deems a response to Paragraph 6 of the Complaint [DE 2] necessary or the Prayer for Relief is deemed to allege facts to which a response is required, the Defendant denies Paragraph 6 and the allegations. *Id.* Pursuant to the Court's August 22, 2018, Standing Scheduling Order [DE 10], Plaintiff was directed to "move for summary judgment or judgment on the pleadings within sixty (60) days." [DE 10, at 2].

As will be discussed further herein, on October 22, 2018, Plaintiff filed the present Motion for Summary Judgment [DE 11], with an accompanying Memorandum in Support [DE 11-1], arguing, in

11

summary, that the ALJ erred by failing to support his determination that Plaintiff was not disabled with substantial evidence, to follow the directives of the Appeals Council, and to properly evaluate Plaintiff's subjective complaints of pain. [DE 11-1, at 2]. Responding to Plaintiff's Motion for Summary Judgment [DE 11], on November 20, 2018, Defendant filed a Motion for Summary Judgment [DE 13] contending the ALJ's January 4, 2018, decision [Tr. 8-29] should be affirmed because the ALJ's decision [Tr. 8-29] was supported by substantial evidence, and Plaintiff's subjective complaints were not supported by the record. [DE 13, at 9-15].

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a reviewing court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations omitted). The scope of judicial review is limited to the record itself, and the reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993) (citations omitted).

The Sixth Circuit has held that "substantial evidence exists when a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Comm'r of Soc. Sec.*,

375 F.3d 387, 390 (6th Cir. 2004) (citations omitted). The limited nature of substantial evidence review prevents the reviewing court from substituting its judgment for that of the ALJ. Rather, so long as substantial evidence exists, the reviewing court should affirm the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth*, 402 F.3d at 595 (citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

"In determining whether the Secretary's factual findings are supported by substantial evidence, [the Court] must examine the evidence in the record 'taken as a whole . . . .'" *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 683 (6th Cir. 1992) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980)). Additionally, the Court "'must take into account whatever in the record fairly detracts from its weight.'" *Wyatt,* 974 F.3d at 683 (citing *Beavers v. Secretary of Health, Educ. & Welfare,* 577 F.2d 383, 387 (6th Cir. 1978). "The substantial evidence standard presupposes that there is a 'zone of choice' within which the [Commissioner] may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)

(citations omitted). "If the Secretary's findings are supported by substantial evidence, then we must affirm the Secretary's decision even though as triers of fact we might have arrived at a different result." *Elkins v. Secretary of Health & Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

### III. DISCUSSION

Under the Social Security Act, the term "disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). A five-step sequential evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In summary, the five-step sequential evaluation process is as follows:

> The first step is to determine whether the claimant is engaged in significant gainful activity. 20 C.F.R. § 416.920(b). If not, the second step is to determine whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." § 416.920(c). If there is a severe impairment, the third step is to determine whether the impairment meets or exceeds the criteria of one of the listed impairments in Appendix 1. § 416.920(d). If the claimant does not satisfy one of the listings, the [fourth step] is to determine whether claimant's impairment prevents him from performing his past relevant work. § 416.920(e). If it does not, the claimant is found not disabled. [At the fifth step,] [i]f the impairment prevents a return to former work, the claimant's residual functional capacity must be

determined, *id.,* and it is then considered in conjunction with the claimant's age, work experience and education in order to ascertain whether the impairment or combination of impairments prevents the claimant from doing other work. § 416.920(f); *see also* Subpart P, Appendix 2, Tables 1–3.

*Williamson v. Secretary of Health and Human Services,* 796 F.2d 146, 149 (6th Cir. 1986); *see also* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.

The claimant "bear[s] the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987). "[T]he Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy." *Id.*

Since the Parties' cross Motions for Summary Judgment [DE 11; DE 13] concern the same facts, the Court will consider the Parties' Motions [DE 11; DE 13] together. The issues presently before the Court are whether the ALJ erred by failing to support his finding that Plaintiff was not disabled with substantial evidence or by failing to properly evaluate Plaintiff's subjective complaints of pain. [DE 11-1, at 2].

## A. WHETHER THE ALJ'S DECISION IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND RESPONSIVE TO THE APPEALS COUNCIL'S DIRECTIVES

Federal regulations provide that the Social Security Administration ("SSA") makes disability determinations based on "all the evidence in [the] case record." 20 C.F.R. § 404.1520(a)(3). Furthermore, the SSA is to "always consider the medical opinions in [the] case record together with the rest of the relevant evidence [they] receive." 20 C.F.R. § 404.1527(b). "In evaluating the intensity and persistence of [a claimant's] symptoms, [the SSA] consider[s] all of the available evidence from [a claimant's] medical sources and nonmedical sources about how [a claimant's] symptoms affect [them]." 20 C.F.R. § 404.1529(c)(1).

In the present case, Plaintiff argues, "When the record in the case is considered in its entirety, the combined effects of Plaintiff's physical impairments, reflect that he could not perform a wide range of even sedentary work on a regular and sustained basis. [DE 11-1, at 16]; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) ("But the ALJ does not contend, and the record does not suggest, that Gayheart could do any of these activities on *a sustained basis,* which is how the functional limitations of mental impairments are to be assessed."). "[A] denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity, a description of what the claimant 'can and cannot do,' must be

reversed." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard v. Comm'r. of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002)).

Here, Plaintiff asserts the April 11, 2017, Appeals Council vacated the ALJ's February 4, 2016, decision [Tr. 137-54], remanded this case, and directed the ALJ to do the following:

> [E]valuate Plaintiff's alleged symptoms and provide rationale in accordance with the disability regulations; to give further consideration to Plaintiff's maximum [RFC] and provide appropriate rationale with specific references; and to obtain additional evidence from a vocation expert if necessary and give the Plaintiff the opportunity for a Hearing on the matter.

[DE 11-1, at 17 (citing Tr. 155-57])]. Plaintiff argues the ALJ failed to do as directed. The Court disagrees.

Plaintiff acknowledges that he suffers from the severe impairments found by the ALJ. [DE 11-1, at 17]. As previously mentioned, the ALJ found Plaintiff had the following severe impairments: "cervical and lumbar degenerative disc disease, history of tibial fracture status post open reduction internal fixation, black lung disease, osteoarthritis of the hands and left shoulder, obesity." [Tr. 14 (citing 20 C.F.R. §§ 404.1520(c)]. However, Plaintiff argues, "The ALJ . . . completely discounted Plaintiff's allegations in regard to his heart and also in regard to his carpal tunnel syndrome in his hands and also completely ignored the psychological impairments which are completely uncontradicted in the record." [DE 11-1, at 17].

Plaintiff asserts that he was diagnosed by Cumberland River Comprehensive Care Center as suffering from a Major Depressive Disorder and placed on an Adult Treatment Plan, which included prescription medication. *Id.* (citing [Tr. 1300-73]). Plaintiff posits, "[T]he ALJ has discounted these serious impairments and also not given any weight or credibility to the restrictions these conditions have on his ability to perform daily activities." *Id.* at 17-18. Plaintiff further asserts, "The ALJ on his RFC did not find any type of psychological conditions even to the point of performing simple, detailed or complication instructions or his ability to be around supervisors, co-workers, or friends." *Id.* at 18. Additionally, Plaintiff argues that the ALJ should have given more weight to the May 1, 2013, physical therapist's functional capacity exam, which found the following:

> Plaintiff did not qualify for any hand or assembly type activities, did not qualify for wrist work, qualified for only infrequent elbow work, does not qualify for shoulder (reaching) work, qualifies for infrequent neck movement work, does not qualify for forward bending work, and does not qualify for any type of squatting activities.

*Id.* (citing [Tr. 649-52]). Plaintiff posits that the ALJ erred by failing to "recognize or even address [the May 1, 2013,] functional capacity evaluation and this is completely unfounded and is not supported by the record. It is clear the Plaintiff suffers from a number of physical and mental problems that have not been addressed by the findings of the ALJ." *Id.* Lastly, Plaintiff alleges, "[T]he

ALJ further failed to address the fact the Plaintiff suffered from a significant knee injury in these [RFCs]," and Plaintiff claims that the ALJ's failure to find there is a significant limitation on Plaintiff's ability to sit, stand, or walk "is completely . . . unsupported by the record in this claim." *Id.* at 18-19.

In his January 4, 2018, decision, the ALJ evaluated Plaintiff's objective medical evidence and discussed the medical records from Plaintiff's alleged onset date to the date of the decision. [Tr. 14-17, 18-21]. Additionally, the ALJ reiterated the Appeals Council's directions for him to follow on remand and stated that he "complied with these directions." [Tr. 11]. Specifically, the ALJ noted that he did the following:

> [A]s required by the Order, the undersigned has considered the claimant's impairment of black lung, and the resulting limitations which are discussed in detail below. The undersigned has also not relied upon evidence not in the file regarding the claimant's alleged ability to care for animals. The undersigned took testimony at the hearing indicating the claimant lives with his wife and child, and does not care for animals. This resolves the issue of the prior ALJ relying on erroneous evidence in the prior hearing decision.

[Tr. 11]. The ALJ further noted, "As for the claimant's black lung disease, one image apparently showed changes consistent with pneumoconiosis," but "the claimant admits he takes no medication for breathing issues, and the medical records show minimal treatment." [Tr. 15 (citing [Tr. 948-50])]; *see also* [Tr. 84]. Additionally, the ALJ cites Dr. Monderewicz's finding that "the

claimant had no dyspnea on exertion, but reported shortness of breath with prolonged activity." [Tr. 15 (citing [Tr. 1156-65])].

Defendant correctly asserts the following:

> [T]he ALJ also reasonably considered Plaintiff's significant activities of daily living including breaking his tibia when was involved in an accident while riding a four-wheeler in July 2014 (subsequent to his March 2013 alleged disability onset), in justifiably finding that Plaintiff retained the functional capacity to perform the reduced requirements of light exertion work activities.

[DE 13, at 10 (citing [Tr. 15, 945-54, 1211-12])]; *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 543 (6th Cir. 2007) (finding it is appropriate for an ALJ to consider the claimant's daily activities when making a credibility determination); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."); 20 C.F.R. § 404.1529(c)(4).

Plaintiff's arguments that the ALJ "completely discounted" Plaintiff's allegations regarding his heart and alleged carpal tunnel syndrome and "completely ignored the psychological impairments which are completely uncontradicted in the record" are unsupported by the record. [DE 11-1, at 17]. The ALJ found Plaintiff's alleged heart blockage and carpal tunnel syndrome were not medically determinable impairments. [Tr. 17]. The ALJ correctly asserts, "The claimant's most current treatment records

from his primary care provider document no cardiac issues or symptoms whatsoever," and "[t]here is no documentation of treatment with a cardiologist." [Tr. 17 (citing [Tr. 1434-45])].

Regarding Plaintiff's alleged carpal tunnel syndrome, the ALJ found, "[There is no EMG/NCV evidence documenting carpal tunnel syndrome or cervical radiculopathy. Current primary care records document no complaints of dropping things or numbness and tingling in the hands." [Tr. 17 (citing 1432-1446)]. The ALJ continued, "While records from the claimant's treatment at a pain clinic in November 2015 show complaints of paresthesia, he has not mentioned such symptoms to current providers, and no tests have been performed to support such a diagnosis." [Tr. 17]; *see also* [Tr. 1321-29]. Moreover, during Plaintiff's January 8, 2016, testimony, he did not remember having his hands x-rayed or who diagnosed his carpal tunnel syndrome. [Tr. 98-100].

Regarding Plaintiff's mental impairments of depression and anxiety, the ALJ determined Plaintiff was no more than mildly limited. [Tr. 16]. The ALJ acknowledged that in 2013, Plaintiff received treatment and medication for his mental impairments. [Tr. 16 (citing [Tr. 719-749])]. However, the ALJ found Plaintiff's counseling records from February and July 2016 "[did] not support more than mild limitation in any mental functional area," and "[c]urrent primary care records do not document psychiatric symptoms, indicating no anxiety, depression or insomnia." [Tr. 16

(citing [Tr. 1330-73, 1432-1446])]. Also, the ALJ gave great weight to the assessment of state agency psychological consultant Dr. Prout, who found Plaintiff did not have a severe mental impairment. [Tr. 21 (citing [Tr. 122-135])].

Finally, turning to Plaintiff's claims that the ALJ failed to address both the findings of Plaintiff's May 1, 2013, physical therapist's examination [Tr. 639-52] and Plaintiff's alleged limitations caused by his knee injury, insofar as they pertain to Plaintiff's ability to sit, stand, or walk, the Court finds Plaintiff's arguments to lack merit. Not only did the ALJ address the physical therapist's May 1, 2014, findings, the ALJ gave them little weight because "[t]he opinion is not offered by an acceptable medical source, and relies far too heavily on the claimant's subjective complaints of pain with all maneuvers" and "g[ave] no weight to the 96% impairment assessed by the claimant's physical therapist for the same reason." [Tr. 20-21]. The ALJ explained, "The claimant's subjective complaints are entirely inconsistent with his mild imaging studies." [Tr. 21]. As will be discussed further herein, the ALJ is correct that Plaintiff's subjective complaints are inconsistent with the imaging studies. Accordingly, it was appropriate for the ALJ to discount the physical therapist's May 1, 2013, findings.

Like the physical therapist's examination, the ALJ thoroughly addressed both Plaintiff's knee injury and its effects on

Plaintiff's ability to sit, stand, and walk throughout his decision [Tr. 8-29]. [Tr. 20-23]. Contrary to Plaintiff's argument, the ALJ's finding that Plaintiff was not significantly limited in his ability to sit, stand, or walk is supported by substantial evidence. Specifically, the ALJ supported his opinion, with citations to evidence in the record, by stating:

> By December[] 2014, the claimant was able to ambulate without major restrictions, although he was not able to run or do increased activities. He still experienced pain and crepitus, but had a normal range of motion and no instability. Physical therapy records after that injury show the claimant had a very mild antalgic gait, and was able to ambulate throughout the clinic without an assistive device. He had some reduced strength.

[Tr. 20 (internal citations omitted) (citing [Tr. 1209-16, 1217-33])]. Despite Plaintiff sometimes using a cane, in addition to the evidence cited to by the ALJ, other medical evidence previously described herein supports the ALJ's decision. *See* [Tr. 105, 123, 131-33, 1434, 1450]. Having reviewed the evidence cited to by the ALJ, and the whole record, the Court finds there is substantial evidence to support the ALJ's decision [Tr. 8-29].

## B. WHETHER THE ALJ PROPERLY EVALUATED PLAINTIFF'S SUBJECTIVE COMPLAINTS OF PAIN

Plaintiff also argues the ALJ failed to properly evaluate his subjective complaints of pain. [DE 11-1, at 19-21]. During the January 8, 2016, hearing [Tr. 70-108], Plaintiff testified to the following: he is right-handed, [Tr. 76]; he had an unrestricted driver's license, [Tr. 77]; he completed the ninth grade and does

not have a GED, [Tr. 77]; his past work involved heavy lifting, and he stopped in 2013 due to problems with his neck and breathing, [Tr. 78-82]; his neck pain was "pretty much constant," and the pain was brought on by moving his neck "a certain way," [Tr. 82-83]; his neck pain "goes through [his] shoulders and shoots pains down [his] arms," [Tr. 83]; some of his medications helped his neck pain for "maybe an hour or two hours," [Tr. 83-84]; he was neither getting treatment for black lung disease nor using an inhaler or breathing device to treat it, [Tr. 84]; he hadn't used an inhaler in about a year because he had not been back to the doctor to get one, [Tr. 84]; he hurt his neck in a car accident, [Tr. 84]; walking, going up stairs, bending over, and hot weather made him short of breath, [Tr. 85]; humidity made him more congested, [Tr. 85]; he fractured his right leg when he accidentally flipped his four-wheeler, [Tr. 85-86]; his right leg was doing "fair," but it still had pain that was "pretty much constant," [Tr. 86]; he had no treatment for his right leg other than physical therapy and surgery, [Tr. 87]; he last smoked marijuana two (2) to three (3) months prior to the hearing and smoked it once a year, [Tr. 87]; he smoked one pack of cigarettes a day, [Tr. 88]; he said he had a cane, and Julie Jackson, APRN, recommended he use one, [Tr. 88-89]; he could only stand for thirty (30) minutes before sitting down and resting, [Tr. 89]; he used his cane when his back was "bad off" or "severely bad," [Tr. 89];

his back pain was "all the way up," [Tr. 89]; when using his cane, he could walk the length of a football field, [Tr. 91]; without his cane, he could walk twenty-five (25) yards before having to stop, [Tr. 91]; he could sit for approximately fifteen (15) minutes before needing to stand up, [Tr. 91]; he could lift or carry ten (10) pounds, [Tr. 91]; he did not cook, clean, do yard work, or help with the vacuuming and laundry, [Tr. 92-93]; he went to the grocery store and other stores with his wife and attended church about six (6) times a year, [Tr. 93-94]; his hobbies included putting model airplanes and cars together, and he attended some of his son's football games, [Tr. 94-95]; he had not been on a four-wheeler since his accident in July 2014, but he did have a motorcycle the year prior to the hearing, [Tr. 95-96]; pain from his hips to his neck was also present, [Tr. 96]; if he experienced pain from standing too long, he would sit in a recliner and lay down for approximately thirty (30) minutes at a time, which occurred four (4) to five (5) times a day, [Tr. 96-97]; and he had difficulty picking up or handling things, including small items, because they would cause pain to up through his fingernails and into his arms, but he did not remember having his hands or shoulders x-rayed or who diagnosed his carpal tunnel, [Tr. 98-100].

During the September 7, 2017, hearing [Tr. 30-69], Plaintiff testified to the following: he could not drive for a long period

of time because his arms would go numb, and his legs would jerk, requiring him to get out and walk around every thirty (30) minutes or so, [Tr. 35]; when working in the mines, he had to lift, push, pull, and tug heavy amounts of weight, [Tr. 38]; physical therapy did not help his back and neck pain, [Tr. 39]; his back pain was worsening, and he wears a back brace off and on that does not help, [Tr. 39-41]; the doctors told him "that [his] back would never get better. It would just get worse," [Tr. 41-42]; his back pain on a scale of one (1) to ten (10) was an eight (8), [Tr. 42]; laying, sitting, and walking too long caused him back pain, [Tr. 42-43]; and his back pain radiates down into his legs, [Tr. 43].

Plaintiff now argues that the ALJ "failed to properly assess the entirety of the medical evidence including all these additional medical problems which are resulting in additional levels of pain for Plaintiff." [DE 11-1, at 20]. In support, Plaintiff claims he has a further decreased tolerance to perform any type of physical activity, including sitting, standing, or walking and using his hands "which result[s] in more difficulties in performing normal activities from a psychological standpoint." *Id.* Plaintiff also blanketly states that "[t]here is new information that is based upon the objective medical findings from the medical records, including diagnostic testing, as well as the consultative exam," and his "testimony regarding his pain level is uncontradicted in the record." *Id.* Notably, Plaintiff neither states what exact

testimony is uncontradicted nor recounts how his testimony is supported by the medical evidence in the record.[2]

Regardless, Defendant disagrees with Plaintiff, arguing, "[S]ubstantial evidence supports the ALJ's finding that the record did not include objective findings or other record evidence that would support Plaintiff's argument that he was subject to disabling symptoms." [DE 13, at 13]. Defendant further contends, "[T]he ALJ's analysis of Plaintiff's symptom complaints is entitled to particular deference from this Court." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). Finally, Defendant contends, "Plaintiff's treatment records showed insufficient objective findings to support his claims of disabling physical pain as well as other alleged symptoms attributed to his alleged impairments through the date of the Commissioner's final decision on January [4], 2018." [DE 13, at 14 (citing *Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 475 (6th Cir. 2014) (unpublished) ("Curler's testimony describing her back pain contrasted starkly with the medical evidence.")).

Notably, Plaintiff fails to support his various arguments by citing to evidence in the in the administrative record. [DE 11-1

---

[2] Plaintiff relies on Social Security Ruling ("SSR") 96-7p, which interpreted SSA Regulation, 20 C.F.R. § 404.1529, in setting forth a two-step process for evaluating subjective complaints. [DE 11-1, at 19-20]. Plaintiff implies that SSR 96-7p required the ALJ to make a finding on the credibility of Plaintiff's statements. *Id.* However, as correctly noted by Defendant, [DE 13, at 12 n. 5], SSR 96-7p was superseded by SSR 16-3p.

at 19-21]. This Court has held, "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Vasquez v. Astrue*, No. 6:12-CV-125-KSF, 2013 WL 1498895, at *6 (E.D. Ky. Apr. 11, 2013) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see also Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). For example, Plaintiff references the underlying medical records, but he fails to explain either what they indicate or how they support his arguments, much less cite to any specific records. [DE 11-1, at 19-21].

At least some citation to the record is required for Plaintiff to demonstrate that he is entitled to relief. Plaintiff's counsel must take the necessary step of pointing to specific instances where the ALJ erred and provide citations to the record that indicate that the ALJ's decision is not supported by substantial evidence. Simply put, this Court is not required to scour the entire record, looking for evidence that may support Plaintiff's claims.

Nevertheless, on the merits, there is no evidence before the Court that indicates the ALJ erred in discounting Plaintiff's subjective complaints. The ALJ reviewed Plaintiff's medical history and relied on substantial evidence, including, objective

medical evidence, and opinion evidence by examining and non-examining physicians, in determining Plaintiff was not disabled and able to perform light work with some limitations. [Tr. 8-29].

When evaluating a disability claim for social security purposes, the claimant's pain should be considered. *Kirk v. Sec. of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981). Both the SSA and the Sixth Circuit have guidelines for analyzing a claimant's subjective complaints of pain. The SSA regulations are set forth in 20 C.F.R. § 404.1529, which states, in part:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a).

The Sixth Circuit's guidelines for evaluating a claimant's assertions of disabling pain are set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). The Sixth Circuit laid out these guidelines as follows:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a

severity that it can reasonably be expected to produce
the alleged disabling pain.

*Id.* In *Duncan*, the Sixth Circuit explicitly noted that the test "does not require . . . 'objective evidence of the pain itself.'" *Id.* (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984)). However, as the Sixth Circuit clarified in *Felisky*, "[b]oth the SSA standards and the *Duncan* test require objective *medical evidence* showing an *underlying medical condition.*" 35 F.3d at 1038–39 (emphasis added); *see also* 20 C.F.R. § 404.1529(a). As previously mentioned, the ALJ may also discount witness credibility when a claimant's testimony contradicts the medical records and other evidence. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d at 531.

In the instant case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. [Tr. 24]. However, the ALJ further found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are inconsistent with the medical evidence and other evidence in the record. [Tr. 24]; *see also* 20 C.F.R. § 404.1529(c)(4). The ALJ's finding is supported by substantial evidence in the record.

In general, the ALJ found Plaintiff's "statements about the intensity, persistence, and limiting effects of his . . . symptoms" to be "inconsistent because the claimant's subjective complaints

are grossly disproportionate with the medical evidence of record, which shows only mild radiographic findings." [Tr. 19]. The ALJ further found, "Several of the conditions about which the claimant testified have not been treated at all in the numerous years this application has been pending." [Tr. 19].

Particularly, regarding Plaintiff's testimony about his back issues, the ALJ found, "While [Plaintiff] has had physical therapy, and some reduced range of motion and reduced strength, his imaging studies simply do support the level of impairment the claimant alleges." [Tr. 19]. In support of this finding, ALJ cites the following medical evidence: March 1, 2013, imaging study showing degenerative disc disease of C5-C6 with mild diffuse bulge, [Tr. 575-94]; March 26, 2013, MRI showing prominent osteophyte disc complexes at C3-C4 and C5-C6 slightly impinging on the thecal sac with no disc protrusion, which Dr. Bean later concluded showed only minor chronic disc bulge at C5-C6, resulting in Dr. Bean diagnosing Plaintiff with cervical and lumbar sprain and finding he should be able to get back to work after physical therapy, [Tr. 595-98, 599-601]; Plaintiff's sprain was treated long term with opioid medication, [Tr. 719-49, 750-947]; October 20, 2014, x-ray showing Plaintiff's lumbar spine to be normal, [Tr. 1166-69]; May 16, 2017, imaging study showing disc disease at C5-C6 with narrowing of the disc space with degenerative changes at C5-C6 and C6-C7 with small anterior osteophyte, [Tr. 1445]; and July 19,

2017, MRI showing mild degenerative changes with no disc herniation, significant central spinal stenosis, or nerve root compression at any level, [Tr. 1452-54]. [Tr. 19-20]. Having reviewed Plaintiff's various x-rays, MRIs, and other medical evidence, the ALJ concluded, "Although the claimant has significant complaints of pain, and some findings of weakness and limited range of motion on examination, based upon his numerous mild imaging studies, the claimant's orthopedic conditions are accommodated by limiting him to a range of light work." [Tr. 20].

The ALJ's evaluation of Plaintiff's testimony is entitled to deference by this Court. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). As previously stated, "The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion." *Putman v. Astrue*, 2009 WL 838155, at *5 (E.D. Tenn. Mar. 30, 2009). So long as the ALJ cited substantial evidence to support his conclusions, this Court may not re-evaluate his determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

When considering all medical evidence and Plaintiff's personal testimony regarding his activities, the ALJ properly evaluated Plaintiff's subjective complaints of pain. Because the ALJ's evaluation is supported by substantial evidence, it is entitled to deference. Thus, remand is unwarranted.

In addition to Plaintiff's unfounded argument that the ALJ failed to properly evaluate his subjective complaints of pain, Plaintiff posits, "[T]he ALJ has failed to properly assess that Plaintiff is an individual closely approaching advanced age." [DE 11-1, at 21]. Plaintiff claims that at the time of the second hearing, he was over fifty (50) years old, and the ALJ "failed to assess Plaintiff's age, education, and past work in making a determination as to whether he met Grid rules." *Id.* Plaintiff's position is that "based on the medical record of Harlan ARH . . . he would be limited to no more than [a] range of sedentary work . . . ." *Id.* However, the ALJ based his decision on VE Ellis's testimony, which was in response to the ALJ's hypothetical questions about "an individual of the claimant's age, education, and work background." [Tr. 64]; *see also* [Tr. 23]. Plaintiff is making yet another argument that had the ALJ found Plaintiff to have a more limited RFC, Plaintiff would have been found to be disabled. While that may be true, as repeatedly stated herein, if an ALJ's decision is supported by substantial evidence, as it is in the present case, the Court may not, and will not, reevaluate the ALJ's determinations. *Ulman*, 693 F.3d at 714.

## IV. CONCLUSION

For the foregoing reasons, the Court, having found no legal error on the part of the ALJ, and that his decision is supported by substantial evidence,

**IT IS ORDERED** as follows:

(1) Plaintiff's Motion for Summary Judgment [R. 11] is **DENIED;**

(2) Defendant's Motion for Summary Judgement [R. 13] is **GRANTED;**

(3) Defendant Commissioner's decision denying Plaintiff's disability claim is **AFFIRMED;**

(4) This matter is **DISMISSED** and **STRICKEN FROM THE COURT'S ACTIVE DOCKET;** and

(5) Judgment in favor of the Defendant will be **ENTERED** separately.

This the 30th day of September, 2019.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge